UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| **Wilmington Trust, National Association, not in its individual capacity, but solely as trustee for MFRA Trust 2014-2** | CIVIL ACTION NO: 2:24-cv-00164-JAW |
| **Plaintiff** | **PLAINTIFF'S TRIAL BRIEF** |
| vs. | RE:<br>638 Alfred Road, Arundel, ME 04046 |
| **James W. Booth** | Mortgage:<br>July 16, 2007<br>Book 15210, Page 372, Re-recorded in Book 15485 Page 224 |
| **Defendant** | |

NOW COMES the Plaintiff, Wilmington Trust, National Association, not in its individual capacity, but solely as trustee for MFRA Trust 2014-2, (hereinafter "Wilmington") by and through its undersigned counsel, and hereby provides its Trial Brief, pursuant to this Court's Order dated September 3, 2025. [ECF 36]

## Summary of the Argument

It is Wilmington's position that it has the right to enforce its mortgage loan through all four of the Counts pled in the Complaint. The Parties agree that both the Booth Note and the Booth Mortgage were executed, delivered, confirmed through initial payments, twice modified by written agreements, (2010 and 2014), paid pursuant to written loan modification agreements, and in default. Wilmington contends that the Booth Note and the Booth Mortgage are enforceable contracts in law and in equity notwithstanding the fact that the Booth Note, presented in support of two prior Complaints and acknowledged twice by Booth in Answers filed in the 2013 and 2017 Foreclosure cases, has since been lost.

Booth also advances three additional defenses to the Complaint, not in his Answer, for the

1

first time. In the event that the Court allows same under his "general denial" of Wilmington's Complaint the "understated 6111 Notice of Right to Cure" and "overstated late charge" issues will also be addressed below. However, Wilmington maintains that these defenses were waived as not timely raised.

A. **Wilmington's Right to Enforce the Note and Mortgage.**

Fundamental foreclosure law in Maine and Title 14 M.R.S. § 6321 provide "that 'the mortgagee or any person claiming under the mortgagee' may seek foreclosure of mortgaged property." *Taitt v. Select Portfolio Servicing,* 2025 WL 2030197 *5, citing *F.D.I.C v. Houde*, 90 F.3d 600, 605 (1st Cir. 1996), quoting *Bank of Am., N.A. v. Greenleaf*, 96 A.3d 700, 704-705 (Me. 2014) (footnote omitted). Further, "in order to foreclose on a property pursuant to a note and mortgage, a party must demonstrate that it has the power to enforce the note and owns the mortgage or is seeking to foreclose on behalf of another who does." *Id.* citing *Homeward Residential, Inc. v. Gregor*, 122 A.3d 947, 954 (Me. 2015). It follows that because in Maine "foreclosure regards two documents—a promissory note and a mortgage securing that note—standing to foreclose involves the plaintiff's interest in both the note and the mortgage." *Id.* quoting *Gregor* at 705.

In Maine the "enforceability of a promissory note, a type of negotiable instrument, is determined by Maine's Uniform Commercial Code (U.C.C.)." *Id.* citing *Greenleaf*, 96 A.3d at 705; 11 M.R.S. §§ 3-1104(1), 3–1301. When an entity has possession of an original promissory note, that entity is entitled to enforce it as a "holder" of the note, if the note is indorsed in blank or "to the bearer," or if the note is indorsed to specifically designate the entity having possession as the designated payee. *Id.* & n.7." *Id.* An entity "may also be classified as having the rights of a holder even though the indorsement chain is deficient or defective." *Id.*; *F.D.I.C. v. Houde*, 90 F.3d 600, 605 (1st Cir. 1996). The loss of an original note is similar to a holder in possession of an original but unendorsed note. "The key in such situations is whether or not the entity in possession received the

note by a valid "transfer" from another party who, at the time of the transfer, was itself entitled to enforce the note." *Id.,* citing *Houde*, 90 F.3d at 605; *Wells Fargo Bank, N.A. v. Burek*, 81 A.3d 330, 335 (Me. 2013); 11 M.R.S. § 3-1203. The transfer of a note and mortgage can be shown a number of ways, reflecting the requisite indicia of ownership, and one of those ways is through the introduction of a loan modification which, as is the case here, proves that Mr. Booth and in 2010 Litton as servicer for Fannie Mae, and in 2014 Greentree (n/k/a Ditech) for Fannie Mae, the predecessors-in-interest to Wilmington, had a "mutual understanding" that the predecessors had the right to enforce the note. *Taitt* at *5, citing *F.D.I.C v. Houde*, 90 F.3d 600, 605 (1st Cir. 1996) and *Wells Fargo v. Burek,* 81 A.3d 330, 335, 2013 ME 87 (Me. 2013)  Specifically, the first paragraph of the loan modification between Green Tree Servicing, LLC (which subsequently became Ditech, the author of the Lost Note Affidavit) states "[t]he Mortgage and Note together, as they may previously amended, are referred to as the 'Loan Documents'." Moreover, sections 4(E) and (D) of the Loan Modification provide: "That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; …" (*See* Exhibit 9).

      The acknowledgment of ownership of the Note was given in exchange for the Note Modifications that not only cured the default, but which significantly reduced the interest rate in the case of the second modification.  In addition, as discussed below, the indicia of ownership and valid transfer of the Note and Mortgage are shown by various documents which will be offered at trial to be admitted into evidence, those include, but are not limited to, the original Lost Note Affidavit (Ex. 2); the certified copies of the recorded and re-recorded Mortgage Deed (Exhibits. 3 and 4); the 2010 Litton Loan Modification (Ex. 6), recorded Assignments of Mortgage (Exhibits. 7, 8, 11 and 15); Mortgage Loan Purchase and Sale Agreement Between Fannie Mae and MFRA Trust 2014-2 with Mortgage Loan Schedule (Ex. 12), and the Bill of Sale from Fannie to the Trust (Ex. 17). Accordingly,

it is clear that Wilmington will be able to meet its burden under the laws of the State of Maine of owning both the Note and Mortgage Deed and having the requisite standing necessary to enforce both contracts.

The history of advances for taxes, property insurance and mortgage insurance and other incidents of ownership also support Wilmington's standing to enforce the Note and the Mortgage contractually and in equity. Since these advances would not have been made to save the property from tax sale and to protect against its loss, **but for** **the ownership interest of the mortgage loan**. Wilmington and its predecessors have advanced $59,274.80 in taxes and insurance alone since Booth elected to stop paying his loan. That fact alone, as Booth explained during his deposition, he did not stop paying the loan because he could not afford to pay it, precludes him from contesting the validity or enforceability of the contracts and clearly reflects his unclean hands in advancing a defense to Count IV Unjust Enrichment.

In support of Booth's argument that Wilmington cannot enforce the Note because it was not in possession of it when it was lost, Booth cites a single case from the District of Columbia which in 1997 reached that conclusion. *Dennis Joslin Co., LLC v. Robinson Broadcasting Corp.*, 977 F.Supp. 491 (D.D.C.1997). He argues that, "[t]his is not a new issue and was not a new issue when the Affidavit was drafted." [ECF 34 at 3.] That is inaccurate, and caselaw interpreting the application of the older UCC 3-309 section in this case is far more illustrative. Magistrate Judge Robertson's decision in *U.S. Bank Trust N.A. v. Murray*, 2025 WL 1071655, as adopted by 2025 WL 880012, March 21, 2025 addresses a nearly identical situation concerning a Lost Note sought to be established through a Lost Note Affidavit. In Massachusetts, also a title theory state with predominantly non-judicial foreclosure processes, a party must either file a judicial foreclosure case or file a declaratory case to establish ownership of the note prior to enforcing in in a non-judicial foreclosure. In *Murray*, U. S. Bank sought to enforce a lost note established through an Affidavit of Lost Note from its

predecessor BANA by documenting that it acquired the 2005 Note on or before June 28, 2015, and that BANA executed a Lost Note Affidavit in connection with the transfer. The Court analyzed the relevant law and explained why U.S. Bank could enforce the Note:

> Accepting the facts in the Verified Complaint as true, Plaintiff has satisfied § 3-309(a)'s conditions for finding that BANA was entitled to enforce the Note when it authorized Plaintiff to act on its behalf. Section 3-309(a)(i) requires "[a] party seeking to enforce a note [to] show that, prior to the loss or destruction of the note, [it] 1) was entitled to enforce the instrument and 2) had possession of the instrument." *Marks v. Braunstein*, 439 B.R. 248, 251 (D. Mass. 2010) (citing *Dennis Joslin Co., LLC v. Robinson Broad. Corp.*, 977 F. Supp. 491, 495 (D.D.C.1997)). The Verified Complaint and Affidavit of Lost Note satisfy those requirements by establishing that the Note was held, then lost, either by Fleet, the Note's originator, or by BANA, Fleet's successor by merger. See *In re Harborhouse of Gloucester*, LLC, 505 B.R. at 372 (actual possession at the time of loss is a requirement for enforcement of a negotiable instrument under § 3-309). Defendant executed the Note in favor of Fleet, a Bank of America Company, on May 27, 2005 (Verified Compl. ¶ 8; Dkt. No. 1-1; Dkt. No. 1-6 ¶ 3). A true and accurate copy of the Note that Defendant executed is attached to the Verified Complaint (Verified Compl. ¶ 8; Dkt. No. 1-1; Dkt. No. 1-9 ¶¶ 2, 6). BANA, as Fleet's successor in interest [by merger] . . . quite entirely stepped into its predecessor's shoes." *Sec. & Exch. Comm'n v. Gastauer*, 93 F.4th 1, 11 (1st Cir. 2024). After the Note was executed, BANA, as Fleet's successor by merger, executed an undated allonge that endorsed the Note to BANA (Verified Compl. ¶ 10; Dkt. No. 1-3 at 2; Dkt. No. 1-8 at 2). On November 18, 2014, a BANA employee, who was familiar with the creation and maintenance of BANA's business records as well as its lost note procedures, executed the Affidavit of Lost Note on behalf of BANA, as Fleet's successor in interest, and on behalf of BANA in its own right (Dkt. No. 1-6 at ¶¶ 1, 2, 4). The affiant attested that Fleet or BANA acquired possession of the original Note on or before June 18, 2005 and that the Note was lost (Dkt. No. 1-6 ¶¶ 4, 5). Whether the original Note was held and lost by Fleet, which merged into BANA and endorsed the Note to BANA, or whether the Note was lost by BANA, the Affidavit of Lost Note shows that BANA has met the conditions of section 3-309(a)(i) because it "was in possession of the [Note] and entitled to enforce it when loss of possession occurred." Mass. Gen. Laws ch. 106, § 3-309(a)(i). *See* Mass. Gen. Laws ch. 106, § 3-301(i) ("the holder of the instrument" is entitled to enforce it); *see also Bishay*, 2020 Mass. LCR LEXIS 195, 2020 WL 6281582 at *4 (defendant was entitled to rely on the lost note affidavit as authority to enforce the terms of the lost note because the defendant was in constructive possession of the note, through its agents, until it was lost).

*U.S. Bank Trust N.A. v. Murry*, 2025 WL 1071655 at * 9-11.

As in Murray, the Lost Notie Affidavit in this matter is executed by Kizzy Houston, duly sworn, possessing personal knowledge and the authority to sign for Ditech Financial LLC ("Ditech") the servicing agent for the holder of the loan Fannie Mae, attests to the fact that the Note attached to her affidavit was lost and that Ditech, as agent for the holder when it was lost, can attest that the copy of the Note attached to her affidavit endorsed in blank is a true and correct copy of the Note when lost, that Fannie Mae was entitled to enforce the instrument when it was lost and that Ditech and its affiliated successors and/or assigns agree to hold harmless and indemnify the borrowers should any unknown party seek to enforce the lost Note against the borrowers. Further, as documented by the Mortgage Loan Purchase and Sale Agreement Between Fannie Mae and MFRA Trust 2014-2 with Mortgage Loan Schedule (Ex. 12), and the Bill of Sale from Fannie to the Trust (Ex. 17), Fannie has clearly granted Plaintiff the authority to act on its behalf to enforce the terms of the Note and Mortgage, including through foreclosure. Accordingly, it is clear that Wilmington, like U.S. Bank in *Murray,* is the owner of and has the right to enforce the Booth Note.

Based on the foregoing, Wilmington maintains that the Note and Mortgage are enforceable. However, even if the Note were not enforceable, an *in rem* foreclosure is clearly supported by the proffered and agreed upon loan documents. A foreclosure action in Maine involves an ownership interest in both the Mortgage Note and Mortgage Deed. However, as discussed below, it is not **required** that the Note be enforceable. Notes and mortgages have different statutes of limitations and other factors may come into play affecting a note but not affecting rights under a mortgage.

The bankruptcy discharge of a/the debtor(s) is but one scenario where a foreclosure may be successful, but the Note is unenforceable. It is undisputed that "a bankruptcy discharge extinguishes only one mode of enforcing a claim - an *in personam* action - while leaving intact another - an *in rem* action."[1] That is well accepted law throughout the United States and is consistent with Maine Law.

---

[1] *Johnson v. Home State Bank,* 501 U.S. 78, 79 Sup. Ct. 1991) and *Fed. Nat'l Mortg. Ass'n v.*

"…[T]he promissory note is separate from the mortgage, and the promissory note's obligations are separate from the claims related to enforcement of the mortgage."[2]

Wilmington does not concede that the lost note precludes it from collecting a personal debt. However, regarding the right to enforce the Mortgage *in rem* only, the Law Court has said "[T]he mortgagee could proceed with foreclosure even though the mortgagee was unable to enforce the promissory note because it did not file a claim against the debtor's estate within the prescribed time period."[3] This has also been the analysis of in this District.[4]

Applying the analysis in *Johnson-Toothaker*, Magistrate Judge Frink Wolf explained the ability to enforce a recorded mortgage the former owner "believed" was paid prior to her husband's death was not impacted by inability to enforce the Note due to his death,

> . . . this Court recently rejected a nearly identical argument, holding that a mortgage securing a promissory note signed by a decedent remained enforceable even though the mortgagee had failed to file a timely claim in probate court, *see Johnson-Toothaker v. Bayview Loan Servicing LLC*, No. 2:20-cv-000371-JDL, 2022 U.S. Dist. LEXIS 143186, 2022 WL 3278883, at *4 (D. Me. Aug. 11, 2022). This Court noted that pursuant to *Johnson v. McNeil*, 2002 ME 99, ¶ 13, 800 A.2d 702, a "mortgage may still be enforced through available foreclosure remedies, such as an in rem foreclosure action, even if the note is unenforceable, because Maine is a title theory state." *Johnson-Toothaker*, 2022 U.S. Dist. LEXIS 143186, 2022 WL 3278883, at *5. Accordingly, [*14] in *Johnson-Toothaker*, "the Cumberland County Probate Court's determination that the mortgaged property at issue never passed through [the decedent's] estate, and that the note creditor could not reopen the estate due to the running of the statute of limitations," rendered only the promissory note—not the mortgage—unenforceable. 2022 U.S. Dist. LEXIS 143186, [WL] at *6.[5]

Thus, even if the Court finds that the Note is not enforceable, and even if the Court finds the

---

*Deschaine,* 170 A.3d 230, fn. 2, 2017 ME 190 (Me. 2017).
[2] *Knope v. Green Tree Servicing,* 161 A.3d 696, 702, 2017 ME. 95 (Me. 2017).
[3] *Keybank N.A. v. Keniston*, 298 A.3d 800, 806, 2023 ME 38 (Me. 2023).
[4] *Johnson-Toothaker v. Bayview Loan Servicing LLC,* No. 2:20-cv-00371-JDL, 2015 2022 WL 3278883, 2022 U.S. Dist LEXIS 143186.
[5] *Westcor Land Title Ins. Co. v. McCarthy*, No. 2:23-cv-00026-NT, 2023 WL 4052878, at *5, 2023 U.S. Dist. LEXIS 104772 at *13.

post-default loss of the original Note precludes judgment on Count II Breach of Note, or Count III Breach of Contract, Money had and Received, or Count IV Unjust Enrichment, based on the analysis in *Johnson-Toothaker* this Court should enter an *in rem* foreclosure judgment in this action.

Booth, in an effort to contest or challenge this well-settled principle of Maine law, cites the following sentence in *Sanders*:

> "In order to enforce a debt obligation secured by a mortgage and note, a party must be in possession of the note." *Mortg. Elec. Registration Sys., Inc. v. Saunders*, 2010 ME 79, ¶ 12, 2 A.3d 289, 296. [ECF 34 at 2]

Booth does not cite nor acknowledge the controlling decision in *Bank of America v. Cloutier*, 2013 ME 17, ¶13, 61 A.3d 1242, 1245(Me. 2013) in making this argument. The trial court in *Cloutier* referred this very question to the Law Court in 2013, because at the time the trial courts were varied in their interpretation of the language of the statute passed in 2009, and the Law Court accepted the reference and the decision is a treatise in this area of the law. *Cloutier* Court was critical of the 2010 *Sanders* reading of the statue and went into great depth in its analysis explaining that the plain meaning of the statute controls and proof that the plaintiff in a foreclosure action has the beneficial interest in the loan or is the servicer for the entity with the beneficial interest in the loan is not limited to production of the Note with an attached allonge specifically endorsed to the plaintiff or endorsed in blank. In *Cloutier* the allonge was not attached to the Note and the issue raised, whether the party advancing the foreclosure was in "possession" of the Note endorsed to it is similar to the facts here, where the evidence of the Note includes a Lost Note Affidavit and other indicia of ownership but does not include the original Note itself either endorsed specifically or in blank. The *Cloutier* Court explained:

> The Superior Court's question arises from a single sentence in 14 M.R.S. § 6321, the foreclosure by civil action statute:
>
> The mortgagee shall certify proof of ownership of the

> mortgage note and produce evidence of the mortgage note, mortgage and all assignments and endorsements of the mortgage note and mortgage.
>
> The Legislature added this sentence to the foreclosure by civil action statute as part of comprehensive foreclosure reform in 2009. *See* P.L.2009, ch. 402, § 17 (effective June 15, 2009). . .Our cases citing this sentence have applied only the second requirement related to evidence of ownership. In *Wells Fargo Bank, NA v. deBree,* we vacated a summary judgment in favor of a bank when the bank "failed to supply evidence that it owns the deBrees' note and mortgage." 2012 ME 34, ¶¶ 7–11, 38 A.3d 1257. Similarly, in *HSBC Bank USA, N.A. v. Gabay,* we vacated a summary judgment when the plaintiff failed to cite evidence satisfying the requirement in its statement of material facts. 2011 ME 101, ¶¶ 1, 12–18, 28 A.3d 1158. **In addition, we acknowledged, but did not apply, this sentence in *Mortgage Electronic Registration Systems, Inc. v. Saunders,* 2010 ME 79, ¶ 12 n. 4, 2 A.3d 289**. (emphasis added) . . .
>
> [¶ 21]  The plain language of the statute best supports the conclusion that the phrase "certify proof of ownership of the mortgage note" requires only that a foreclosure plaintiff identify the owner or economic beneficiary and, if it is not itself the owner, prove that it has power to enforce the note. *See id.* This unambiguous meaning, which is not illogical or absurd, controls, and we do not look beyond the statute's words.

*Cloutier*, 2013 ME 17, at ¶13-21, citing *ExpressJet Airlines, Inc.,* 2011 ME 123, ¶ 16, 32 A.3d 1030.

In the instant matter Booth has acknowledged signing and modifying the Booth Note, twice. He admitted the execution and terms of the Note twice in his answers in two prior foreclosure actions, and he executed two loan modification agreements. It is the owner of the Note, Wilmington, that advances this action against Booth and the property. The indicia of that ownership includes a Lost Note Affidavit. It contains language very similar to that in *Murray,* but goes well beyond that, as outlined above, and demonstrates that it is Wilmington and its predecessors who, since 2014, have kept this property insured and from tax sale by advancing the taxes and insurance.  It is Wilmington who engaged in settlement and mediation and who pays the expenses of this litigation to enforce its rights.  Wilmington has kept the records of sums advanced and received.  In this world of ever frequent ENotes, where parties often rely on electronic transmission of documents, it is as it should be that

9

evidence of a Note obligation is not limited to the production of the original document, nor is it aligned with recent Law Court decisions that a borrower who elects not to honor his contractual obligation since 2014 should be awarded a free house for his efforts. *J.P. Morgan Mortg. Acquisition Corp. v. Moulton*, 2024 ME 13, ¶ 11, 314 A.3d 134; *Bank of New York Mellon v. Russell*, (Dec. No. Mem 25-92) (October 2, 2025).

**B.  Booth is Estopped from denying Wilmington's Right to Enforce the Note and Mortgage.**

The Defendant is judicially estopped from arguing that the Lost Note Affidavit is insufficient to prove ownership where, as here, his prior Answers in 2013 and 2017 acknowledge Wilmington's predecessor-in-interest's standing.  It was in reliance on and in acknowledgment of the standing of the holders of the Booth Note and Mortgage following the SunTrust origination that Booth, and the predecessors of Plaintiff, twice modified this loan.

Mr. Booth has admitted twice in past foreclosure proceedings that he executed the Note and its terms.  First, in October 2013, the Plaintiff's predecessor in interest, Green Tree Servicing, LLC, filed a foreclosure complaint against the Defendant in the Maine District Court in Biddeford (RE-13-188).  In paragraph 5 of the 2013 Complaint, the Green Tree alleged that "[o]n July 16, 2017, James W. Booth executed and delivered to SunTrust Mortgage, Inc. a certain promissory note in the original principal amount of $245,000.00 (the "Note").  A copy of the Note is attached hereto as Exhibit A." (Ex. 8).

The Defendant filed his Answer on November 12, 2013, and in paragraph 5 of his Answer, Mr. Booth admitted the allegations in paragraph 5 of the 2013 Complaint. (Ex. 9).  The copy of the note attached to the 2013 Complaint is the same note at issue in this case. (Compare Ex. 2 and Ex. 8).

Second, in December 2017, the Plaintiff in this case (Wilmington Trust) filed a new foreclosure case against Mr. Booth.  It was filed in the Maine District Court in Biddeford and was assigned docket number RE-17-110.  In paragraph 5 of the 2017 Complaint, the Plaintiff alleged that

"[o]n July 16, 2007, James W. Booth executed and delivered to SunTrust Mortgage Inc. a certain promissory note in the original principal amount of $245,000.00 (the "Note"). SunTrust Mortgage, Inc. executed an endorsement in blank appearing on the Note, rendering the Note enforceable by the party that is in possession of the original Note. A copy of the Note is attached as Exhibit A." (Ex. 20).

Again, Mr. Booth filed an Answer and admitted in paragraph 5 the allegations in paragraph 5 of the 2017 Complaint. (Ex. 21). The copy of the note attached to the 2017 Complaint is the same note at issue in this case. (Compare Ex. 2 and Ex. 20).

Likewise, in paragraph 8 of the 2017 Complaint, the Plaintiff alleged that "[t]he terms of the Note and Mortgage were modified pursuant to an agreement with an effective date of September 1, 2010, and further modified by an agreement with an effective date of September 1, 2014 and recorded on September 2, 2014 in Book 16883, Page 585. Copies of the modification agreements are attached hereto as Exhibit D." (Ex. 20). Mr. Booth admitted that allegation in paragraph 8 of his 2017 Answer. (Ex. 21).

**C. Wilmington's 14 M.R.S. 6111 Notice is Compliant and Supports a Foreclosure Judgment**

Wilmington contends that pursuant to this Court's decision in *U.S. Bank v. Jones*, 330 F. Supp.3rd 530, 540 (D.Me. June 26, 2018), affirmed by 925.F.3d 534 (1st Cir., May 30, 2019), rehearing and rehearing *en banc* denied on July 23, 2019, as well as the Law Court's recent decision in *Wilmington Trust, N.A. v. Severance*, Civil Action No. Yor-24-247, 2025 WL 521817, at *1 (Me. Feb. 18, 2025), both relying on the analysis in *Wilmington Trust, Nat'l Ass'n v. Vigneault*, No. 1:19-CV-572-DBH, 2021 WL 3598534, at *2 (D.Me. Aug. 13, 2021), outlining that a Notice of Right to Cure that does not overstate the amount required by the lender to cure the debt, satisfies the statute. As such, Booth's recently advanced argument[6] that the Notice of Right to Cure is invalid because it

---

[6] *See* ECF 9 the Answer only includes a general denial and does not include an affirmative defense or

fails to include every pre-notice of right to cure attorney fee paid is contrary to *Jones* and its progeny and should not support dismissal of Count I Judgment of Foreclosure and Sale under *Severance*. *See also Bank of New York Mellon v. Russell*, (Dec. No. Mem 25-92) (October 2, 2025). Booth's prior counsel agreed to dismiss the 2017 matter without prejudice and the undersigned sent a compliant Notice of Right to Cure that did not require Booth to pay the corporate advances incurred to date, $10,155.32. Had Booth reinstated the loan during the cure period he would not have been required to advance those sums. In turn, the proposed Judgment that will be submitted after the evidence is closed will not include the $10,155.32 in corporate advances.

Accordingly, the Notice of Right to Cure acknowledged to be sent and received through prior counsel for the borrower, contains enough detail to satisfy 14 M.R.S. §6111. *See Wilmington Trust., N.A. v. Vigneault,* No. 1:19-CV-572-DBH, 2021 WL 3598534 at *2 (D. Me. Aug. 13, 2021) and *Wilmington Trust, N.A., N.A. v. Severance,* Dec. No. Mem 25-27 Feb. 18, 2025; *U.S. Bank v. Jones.*[7]

**D. Wilmington's Count III Breach of Contract Claim, Money Had and Received does not Require Production of the Original Note**

"To prevail on a breach of contract claim under Maine law, there must be a legally enforceable contract consisting of (1) a meeting of the minds; (2) consideration; and (3) mutuality of obligations." *Westcor Land Title Ins. Co. v.* McCarthy, 2:23-cv-00026-NT, 2023 U.S. Dist. Lexus 104772 (D.Me 2023), quoting *von Hirsch v. Olson*, No. 2:21-CV-00107-NT, 2022 U.S. Dist. LEXIS 6965, 2022 WL 123895, at *6 (D. Me. Jan. 13, 2022) (cleaned up). "Proof of a breach of contract action consists of three elements: (1) breach of a material contract term; (2) causation; and (3) damages." Id. (cleaned up) *Id.*

Where, as here, the uncontested facts support the a meeting of the minds; consideration; and

---

claim that the Notice of Right to Cure is invalid because it did not include all prior attorney's fees.
[7] *See Jones* at 540 (D.Me. June 26, 2018).

mutuality of obligations as well as the breach (non-payment), causation (failure to pay) and damages (principle advanced as well as interest and advances), even if this Court finds that loss of the Original Note precludes judgment on Count II, Judgment on Count III is warranted based on the agreed facts and uncontested exhibits.

E.  **Booth's Late Fee Argument is Contrary to Maine Law on Acceleration and does not invalidate its 6111 Notice or Bar this Foreclosure.**

Raised for the first time in the pretrial memo, this argument misconstrues Maine law and the facts of this case. *Finch*, *Moulton* and *Girouard* stand for the proposition that if a NRC is not valid then the loan has not been validly accelerated.[8] The inclusion of the word "acceleration" in a statement does not preclude the late charges in the demand/NRC and the Notice is valid. This loan was modified and brought current with the 2014 step rate modification. The 5% late fee provided for in the agreement allowed the lender to charge approximately $77.00 a month from the default in 2014, and the amount in the demand is far less than the contract provided for. Moreover, this new argument is supported only by a single 2004 case from Connecticut. Connecticut and New York, where this argument is occasionally advanced, are not title theory states they are lien theory states. As evidenced by the out of circuit, out of state case, there is no support for this argument in Maine generally and based on the facts of this case, even if it were the law here that demands were limited in this way, and even if mortgage statements could accelerate loans, the late fees are far less that the contract provided for.

F.  **The Limitations Period for a Claim of Unjust Enrichment Has Passed**

---

[8] *J.P. Morgan Mortg. Acquisition Corp. v. Moulton*, 2024 ME 13, ¶ 11, 314 A.3d 134; *Finch v. U.S. Bank.* 2024 ME 2, ¶ 51, 307 A.3d 1049; *Girouard v. Wells Fargo Bank*, Civil Action No. 17-CV-00022-LEW, 2024 WL 3691670, at *1 (Judge Walker reversed his prior decision for the borrowers on Summary Judgment in light of the "sea change in Maine foreclosure law brought about by the Law Court's recent decision in *Finch v. U.S. Bank, N.A.*").

In Maine, unjust enrichment claims are subject to the 6-year statute of limitations set forth in 14 M.R.S. § 752.[9] That section provides that "[a]ll civil actions shall be commenced within 6 years after the cause of action accrues and not afterwards, except actions on a judgment or decree of any court of record of the United States, or of any state, or of a justice of the peace in this State, and except as otherwise specially provided." A cause of action generally accrues when a plaintiff receives a cognizable injury.[10] In the *Maine Municipal Employees Health Trust* case, the cognizable injury accrued when the Defendant (Maloney) first settled with Northland Insurance Company, and the statute of limitations did not start running when the last payment under an annuity was made. This case is different. Here, the Plaintiff has paid, and it continues to pay, property taxes and insurance premiums for the Property that benefited the Defendant. The taxes were assessed annually, and the insurance was renewed or acquired periodically. Thus, the Plaintiff or its predecessors suffered an injury each time the property taxes or insurance premiums were paid during the six-year period prior to the filing of the complaint on May 8, 2024. *Knope v. Green Tree Servicing,* 2017 ME. 95 ¶¶ 10-13, 23.

## Conclusion

Wherefore, based on the foregoing argument and authority Wilmington submits that the evidence and testimony at trial will support Judgment on each of the Counts advanced. In the event that Judgment on Court I for Foreclosure and Sale is granted, the Plaintiff will agree to dismiss Count II - Breach of Note, Count III - Breach of Contract, Money Had and Received, Count IV - Unjust Enrichment without prejudice upon expiration of the appeal period.

---

[9] *Maine Municipal Employees Health Trust v. Maloney* 2004 ME 51, ¶ 9, 11, 846 A.2d 336, 339-40; *see also Estate of Miller*, 2008 ME 176, ¶ 28, 960 A.2d 1140, 1146.
[10] *Maine Municipal Employees Health Trust v. Maloney* 2004 ME at ¶ 10, 846 A.2d at 339.

Dated: October 24, 2025  /s/Reneau J. Longoria, Esq.
Reneau J. Longoria, Esq. Bar No. 005746
Attorney for Plaintiff
Doonan, Graves & Longoria, LLC
100 Cummings Center, Suite 303C
Beverly, MA 01915
(978) 921-2670
RJL@dgandl.com

## CERTIFICATE OF SERVICE

      I, Reneau J. Longoria, Esq., hereby certify that on October 24, 2025, I served a copy of the above document by electronic notification using the CM/ECF system and/or First Class Mail to the following:

/s/Reneau J. Longoria, Esq.
Reneau J. Longoria, Esq. Bar No. 005746
Attorney for Plaintiff
Doonan, Graves & Longoria, LLC
100 Cummings Center, Suite 303C
Beverly, MA 01915
(978) 921-2670
RJL@dgandl.com

John Z. Steed, Esq.
Island Justice Law
40 School St.
P.O. Box 771
Stonington, ME 04681