UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

WILMINGTON TRUST, NATIONAL          )
ASSOCIATION, NOT IN ITS INDIVIDUAL  )
CAPACITY, BUT SOLEY AS TRUSTEE      )
FOR MFRA TRUST 2014-2,              )
                                    )
                Plaintiff,          )
                                    )
        v.                          )        No. 2:24-cv-00164-JAW
                                    )
JAMES W. BOOTH,                     )
                                    )
                Defendant.          )

**ORDER ON PLAINTIFF'S MOTION TO APPOINT RECEIVER**

At the conclusion of a bench trial in this mortgage foreclosure action, while the

trial briefing was pending and before the court entered judgment, the plaintiff moved

to appoint a receiver for the limited purpose of documenting the condition of the

property out of concern there would ultimately be a deficiency.  Because the plaintiff

has not identified an extraordinary circumstance nor demonstrated the necessity of

receivership under factors articulated in caselaw, the court dismisses without

prejudice the plaintiff's motion to appoint a receiver.

I.    **BACKGROUND**

    A.    **The Allegations in the Complaint**

This lawsuit is a claim by a lender against a borrower, which includes several

counts, including mortgage foreclosure.[1]  *Compl.* (ECF No. 1).  Wilmington Trust

(Plaintiff) claims that on July 16, 2007, James W. Booth (Defendant) took out a loan

---

[1]    To provide context, the Court has summarized the relevant contents of Wilmington Trust's
complaint against Mr. Booth. *Compl.* at 1-13.

in the amount of $245,000 originally evidenced by a promissory note and secured by a residence located at 638 Alfred Road, town of Arundal, county of York, state of Maine.  *Id.* ¶ 8.  The Defendant executed a promissory note on July 16, 2007 to SunTrust Mortgage, Inc. in the amount of $245,000.  *Id.* ¶ 7.  On the same date, the Defendant also executed a mortgage deed in favor of Mortgage Electronic Registration Systems as nominee for SunTrust Mortgage securing the property located at 638 Alfred Road, Arundel, Maine 04046.  *Id.* ¶ 8.  On March 17, 2009, Mortgage Electronic Registration Systems assigned the mortgage to Litton Loan Servicing, LP, and on November 14, 2012, to Green Tree Servicing, LLC. *Id.* ¶ 9. Litton Loan Servicing on November 19, 2012 assigned the mortgage to Green Tree Servicing LLC.  *Id.* ¶ 10.

On August 18, 2014, Mr. Booth executed a Home Affordable Modification Agreement, which adjusted the principal amount of the note to $329,288.23, and acknowledged the enforceability of the note and mortgage as of that date by the holder.  *Id.* ¶ 11.  On March 2, 2015, Green Tree assigned the mortgage to Federal National Mortgage Association.  *Id.* ¶ 12.  On January 4, 2017, Federal National Mortgage Association assigned the mortgage to Wilmington Trust, *id.* ¶ 13, and on July 13, 2017, SunTrust Mortgage assigned the mortgage by quitclaim assignment to Wilmington Trust.  *Id.* ¶ 14.  Wilmington Trust claims that Mr. Booth failed to make a payment on the note and mortgage on October 1, 2014 and all subsequent payments and, therefore, has breached the conditions of both instruments.  *Id.* ¶ 36.

**B.    The Bench Trial**

The bench trial began on October 31, 2025, *Min. Entry* (ECF No. 50) and was continued, and ultimately concluded, on November 25, 2025.  *Min. Entry* (ECF No. 56).  At the conclusion of the bench trial, the Court asked for post-trial briefing.  *Id.*; *Order* (ECF No. 64) (granting extension such that Plaintiff Post Trial Brief due by January 23, 2026, Defendant Response Post Trial Brief due by February 6, 2026, and Plaintiff Reply Post Trial Brief due by February 20, 2026).

**C.    The Plaintiff's Motion to Appoint Receiver**

Also on November 25, 2025, the Plaintiff filed a motion to appoint receiver "to take control for the purpose of documenting the current condition of the Property, interior and exterior to ensure the status quo is maintained" given "in the end there will likely be a deficiency."  *Pl.'s Mot. to Appoint Receiver* at 1 (ECF No. 55) (*Pl.'s Mot.*).  On December 16, 2025, the Defendant responded, arguing that the Plaintiff had not cited any caselaw to support the extraordinary remedy of receivership in this case.  *Resp. in Opp'n to Pl.'s Mot. to Appoint Receiver* at 3 (ECF No. 60) (*Def.'s Opp'n*).  On December 30, 2025, the Plaintiff replied, arguing that the receivership is for the limited purpose of monitoring the Defendant's property, which has been converted to a commercial business, and that "the Court may direct that income to the taxes and insurance obligations to protect and preserve the property from further loss in value."  *Pl.'s Reply to Def.s Resp. in Opp'n to Pl.'s Mot. to Appoint Receiver* at 2 (ECF No. 62) (*Pl.'s Reply*).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 66 governs "an action in which the appointment of a receiver is sought or a receiver sues or is sued." FED. R. CIV. P. 66. This Court also has inherent equitable power to appoint a receiver to manage or preserve property. *United States v. Quintana-Aguayo*, 235 F.3d 682, 686 & n.8 (1st Cir. 2000). The appointment of a receiver is an extraordinary remedy that requires a showing of an urgent need to protect property, but "the decision to appoint a receiver" ultimately "lies within the discretion of the court." *Consol. Rail Corp. v. Fore River Ry. Corp.*, 861 F.2d 322, 326 (1st Cir. 1988).

> Courts have recognized many factors that are relevant for a court to consider when determining the appropriateness of the appointment of a receiver. These include fraudulent conduct on the part of the defendant; imminent danger that the property will be lost or squandered; the inadequacy of available legal remedies; the probability that harm to the plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; the plaintiff's probable success in the action and the possibility of irreparable injury to [its] interests in the property; and whether the interests of the plaintiff and others sought to be protected will in fact be well served by the receivership.

*Id.* at 326-27 (cleaned up).

## III.    DISCUSSION

Because the Plaintiff has not identified an extraordinary circumstance nor demonstrated necessity of receivership under factors articulated in *Fore River*, the Court dismisses without prejudice the Plaintiff's motion to appoint a receiver.

The Plaintiff argues that at the resolution of this matter, "there will likely be a deficiency" which means that the Plaintiff's "asset is at risk of loss of value" but that a receiver could mitigate the loss by "documenting the current condition of the

4

Property, interior and exterior to ensure the status quo is maintained." *Pl.'s Mot.* at 1. The Plaintiff further argues that the property "is in peril of its value being diminished as a result of lack of regular and property maintenance, potential misuse and purposeful neglect and destruction and/or removal of fixtures and structures on the premises" and that, accordingly, "good cause exists to appoint a receiver" to preserve not only the property, but also "the proceeds from the asset." *Id.* at 7. In their reply, the Plaintiff clarifies that "[i]f the Receiver determines that the property is being used to generate income and that income could be used to meet the tax or insurance obligations he will report same to the Court for further direction." *Pl.'s Reply* at 3.

The Defendant, on the other hand, argues that the Plaintiff has made no showing of extraordinary circumstances that might warrant appointment of a receiver nor has the Plaintiff engaged with the factors outlined in *Fore River*. *Def.'s Opp'n* at 3-6. Specifically, the Defendant explains why the cases the Plaintiff cites to support appointment of a receiver are not analogous. *See id.* at 5-6 (distinguishing cases).

In cases where courts have used their discretion to appoint receivers, there have been extraordinary circumstances that necessitated oversight of the property. Here, the Court agrees with the Defendant that the Plaintiff has not demonstrated extraordinary circumstances on this record. In support of its motion to appoint receiver, the Plaintiff cites *U.S. Bank v. Michael M. Cozzone, Jr., et al* (No. 2:22-cv-00357-JDL) (D. Me. Mar. 9, 2023). However, in *Cozzone*, the mortgagors failed to

appear to defend against the foreclosure, and therefore the court's one-sentence order appointing a receiver was in the nature of a default. *Id.. J. of Foreclosure and Sale* at 7 (ECF No. 23). By contrast, here, Mr. Booth "has retained counsel and actively defends this action." *Def.'s Mot.* at 5.

Furthermore, unlike the opportunistic defendant in *Chen*, *Wilmington Sav. Fund Soc'y, FSB as Tr. for Verus Securitization Tr. 2022-2 v. Chen*, No. 1:25-CV-00216-LEW, 2025 U.S. Dist. LEXIS 142248 (D. Me. July 21, 2025), in Mr. Booth's case "[t]here is no rent diversion" nor "illegal activity." *Id.* Unlike the insolvent defendant in *SRA Augusta SPE*, *U.S. Bank Nat'l Ass'n v. SRA Augusta SPE, LLC*, No. 1:16-CV-00410-JDL, 2016 U.S. Dist. LEXIS 159193 (D. Me. Nov. 17, 2016), "[t]here is no risk of forfeiture" and "Mr. Booth has not filed bankruptcy and has not surrendered the property." *Id.*

The United States District Court in Maine has appointed a receiver pending a foreclosure, when there is evidence that the mortgagor has rented out the property and therefore, in addition to failing to pay in accordance with the terms of the note and requiring the lender to pay maintenance and other costs, the mortgagor is actually enriching himself or herself from receipt of tenant income while the foreclosure action proceeds. *U.S. Bank Trust N.A. v. Leo*, No. 2:23-cv-00459-NT, 2024 U.S. Dist. LEXIS 206470, at *11-15 (D. Me. Nov. 14, 2024), *aff'd* 2024 U.S. Dist. LEXIS 222745 (D. Me. May 3, 2024); *U.S. Bank Trust N.A. v. Gauthier*, No. 2:23-cv-00380-JAW, 2024 U.S. Dist. LEXIS 80827, at *7-11 (D. Me. May 3, 2024). Alternatively, if the mortgagee presents evidence that the mortgaged property is

falling into disrepair, has become unsightly, is unoccupied, and is at risk of diminishing in value, the court may act to protect the asset pending foreclosure. *See U.S. Bank Trust, N.A. v. Pretorius*, No. 2:22-cv-00240-JAW, *Order on Mot. to Appoint Receiver* at 1-2 (D. Me. Jul. 8, 2024).

Based on the evidence in this record, the Court cannot find that the property is at risk of being lost or squandered nor is the property at risk due to fraudulent conduct on the part of the Defendant. Mr. Booth maintains that he does not pay the mortgage because "he disputes Plaintiff's right or ability to enforce it" not because he has abandoned or sabotaged it. *Def.'s Resp.* at 3. Further, he asserts that "[t]he property, as shown in Plaintiff's own photographs, is well-maintained. There is no evidence of deterioration, fraud, or illegal activity." *Id.*

Evaluating the adequacy of available legal remedies and comparative harm to the parties, the Court concludes that the Defendant has the stronger position. From viewing the admitted photographs of 638 Alfred Road, it is apparent that Mr. Booth is operating his business, Booth Landscape Contractors, from the residence, and some heavy equipment is parked on the premises, but there is no indication that the equipment and the operation of his business are diminishing the value of the premises. One photograph shows spotting on one of the exterior walls, but the Court does not know what the spots are and will not speculate. At least based on the evidence before the Court, the Court cannot find that the property is likely to be "lost or squandered." *Fore River*, 861 F.2d at 326-27. To the contrary, the Defendant appears to be actively using the property. Nor is there evidence that the Defendant

has leased the property to a tenant, who is paying him rent, while he fails to pay his mortgage.

The Plaintiff argues that there is a possibility of deficiency. *Pl.'s Mot.* at 1. However, the Defendant counters that "Plaintiff cites no authority that says the mere possibility of a deficiency judgment" justifies the appointment of the receiver. *Def.'s Opp'n* at 2. The Court agrees—deficiency on the facts in this case is a speculative harm. As to comparative harm, the Court accepts the Defendant's position that the property is reasonably well maintained and not in danger of falling into disrepair. The Court also accepts that the Defendant considers the imposition of a receiver an infringement on his ownership rights which Maine law protects until the right of redemption has expired. *Id.* at 7; *see also* 14 M.R.S. § 6322 ("a writ of possession may not issue until the expiration of the period of redemption"). Thus, the harm the Defendant might face if a receiver is appointed outweighs the harm the Plaintiff might face is a receiver is not appointed.

In short, the circumstances of this case do not warrant the appointment of a receiver.

Finally, the Plaintiff is proceeding with its complaint for foreclosure and the end of the case is in sight. The Court has held a two-day evidentiary hearing, and the parties are submitting memoranda. Once counsel file the memoranda, Count One of the Plaintiff's complaint will be ready for decision. If the Plaintiff is successful, it may then proceed with a public sale after the running of the redemptive period.

## IV.    CONCLUSION

The Court ORDERS that the Plaintiff's Motion to Appoint Receiver (ECF No. 55), submitted by Wilmington Trust, National Association, is DISMISSED without prejudice.

SO ORDERED.

> /s/ John A. Woodcock, Jr.
> JOHN A. WOODCOCK, JR.
> UNITED STATES DISTRICT JUDGE

Dated this 12th day of January, 2026